IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CYNTHIA PATRICIA CORNELL, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. CIV-24-376-SPS ) |
| FRANK BISIGNANO,[1] Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Cynthia Patricia Cornell, requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and REMANDED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Leland Dudek as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

"only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on June 23, 1965, and was 58 years at the time of the ALJ's decision. (Tr. 70, 26).  She has completed two years of college and has past relevant work as an ultrasound technologist. (Tr. 212).  Claimant asserts she has been unable to work since June 2020, alleging disability due to headaches, and back and hip conditions. (Tr. 10-26).

### Procedural History

Claimant applied for supplemental security income (SSI) under Title XVI of the Social Security Act (the Act) on June 27, 2022. (Tr. 171, 174). In a February 2, 2024, decision, the ALJ found Claimant not disabled under the Act. (Tr. 10-26). The Appeals Council subsequently denied review (Tr. 1-4), making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. However, as part of Claimant's request that the Appeals Council review the ALJ's decision, she submitted additional evidence to the agency that was not before the ALJ. (Tr. 38-40). This evidence consisted of a "Medical Source Statement of Ability To Do Work-Related Activities (Physical)," a form signed by Randall Hendricks, M.D. on March 1, 2024. *Id.* The Appeals Council found that this evidence did not show a reasonable probability that it would change the outcome of the ALJ's decision, and did not exhibit the evidence. (Tr. 2). The Court has jurisdiction under 42 U.S.C. § 1383(c)(3).

### Decision of the Administrative Law Judge

The ALJ made her decision at step four of the sequential evaluation.  At step two, the ALJ found that Claimant had severe impairments of degenerative joint disease of the bilateral sacroiliac

joints, status post fusion of the right and left sacroiliac joint; degenerative disc disease of the lumbar, cervical, and thoracic spine; status post compression fracture of the spine, and migraine headaches. (Tr. 13).

Next, she found that Claimant's impairments did not meet a listing. (Tr. 14). At step four, she found that Claimant retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) except as follows:

> occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl as those terms are defined in the *Selected Characteristics of Occupations (SCO)*; no more than occasional exposure to hazards such as dangerous moving machinery and unprotected heights; no more than occasional exposure to loud noise as defined in the *Selected Characteristics of Occupations*; and no commercial driving.

(Tr. 16).

At step four the ALJ found that Claimant can perform her past relevant work as an ultrasound technologist as generally performed in the national economy. (Tr. 25).

The relevant evidence before the ALJ reflects treatment prior to the alleged onset of disability in February 2020. Claimant participated in physical therapy in February and March 2019 for a longstanding back condition. (Tr. 355-62). Following a work-related injury in September 2019, Claimant was diagnosed with lumbar stenosis and sacroiliac (SI) joint dysfunction. (Tr. 364-80). Beginning with the relevant period in February 2020, Claimant underwent a right SI joint fusion with Kasra Ahmadinia, M.D. (Tr. 451-52). Claimant reported improvement in her pain and walking ability after surgery, and exams demonstrated normal sensory and motor findings, including full strength for all muscle groups. (Tr. 381-86, 393, 395).

In May 2020, Claimant reported left SI joint pain. (Tr. 387-88). Claimant was treated conservatively but did not achieve resolution of her symptoms (Tr. 389-96), and Dr. Ahmadinia

performed a left SI joint fusion in October 2020. (Tr. 404-08, 449-50). Claimant reported decreased pain following surgery but was unable to get significant relief for her cervical spine. (Tr. 409-10, 415-16).

Claimant also reported neck pain at the end of 2020. (Tr. 409-15). A cervical spine MRI showed spondylosis at C4-5 and C6-7 and mild to moderate stenosis. (Tr. 418-19, 445-46). Claimant's physical exams were normal, including motor and sensory findings. (Tr. 419, 422, 425). Dr. Ahmadinia indicated that she did not have evidence of severe stenosis or radicular symptoms and recommended physical therapy. (Tr. 418). After Claimant completed physical therapy (Tr. 333-41), Dr. Ahmadinia indicated her neck pain was mostly muscular in nature, and she was at maximum medical improvement. (Tr. 418, 421-25). He released Claimant from his care in April 2021.

Claimant saw Randall Hendricks, M.D. in December 2021 for a physical evaluation in connection with her workers' compensation claim. (Tr. 427-30). Her physical exam showed reduced range of motion, likely due to bilateral SI joint fusions, mildly abnormal left foot sensation although sensation was otherwise normal, normal heel-toe walking and single leg stair climb, and normal reflexes. (Tr. 429). Later that month, Dr. Hendricks reviewed a lumbar spine MRI, which showed degenerative spondylolisthesis, disc bulging at L4-5, and diminished disc space height. (Tr. 431, 442-43). He indicated that Claimant's work-related injury in 2019 aggravated a pre-existing condition and recommended surgery. (Tr. 432-33).

In early 2022, a right hip MRI, showed trochanteric bursitis but minimal degenerative changes. (Tr. 437, 439-41). In November 2022, Claimant presented to David Lewis, M.D. for a physical evaluation in relation to her Social Security disability claim. (Tr. 485-91). Claimant

reported constant pain in her cervical, thoracic, and lumbar spine, back, right hip, and left leg. (Tr. 485). She reported current symptoms of pain, numbness and incontinence. *Id.*

Claimant also reported headaches starting in 2020 secondary to a work-related injury. *Id.* Claimant indicated that she was limited in sitting, standing, and walking. (Tr. 586). A physical exam showed some difficulty getting up and down from the exam table and mild difficulty with heel-toe walking, inability to hop on one foot, and left ankle numbness. She reported symptoms of vertigo, limitation of motion, syncope, dyspnea on exertion, hypertension, paretesias, and difficulties with memory. (Tr. 486).

Claimant saw her primary care provider, John Fell, D.O. during the relevant period for routine conditions. (Tr. 461-73, 515-18). In February 2022, Claimant received emergency treatment for neck pain after she reportedly experienced dizziness and hit her head. (Tr. 327-29). Her physical exam was normal. (Tr. 328). Claimant also received emergency treatment in November 2022, reporting acute low back pain after bending. (Tr. 493). Her physical exam showed lumbar tenderness, and a positive straight leg raise. *Id.*

In April 2023, Claimant established care with a neurology provider, Gery Hsu, M.D., for neck and back pain and headaches. (Tr. 521-24). Claimant's musculoskeletal and neurological exams were normal, and while Dr. Hsu noted a lot of degenerative changes in her cervical spine, he could not pinpoint the cause of her symptoms based upon her MRI. (Tr. 522, 524). He did not recommend surgery and provided a referral to a pain management provider. (Tr. 521-22).

In August and September 2023, Claimant saw Jack Weaver, M.D, for occipital nerve steroid injections for headaches. (Tr. 539-43, 553-62). Dr. Weaver indicated that recent imaging of her cervical spine showed degenerative changes, most pronounced at C4-5, and an MRI of the thoracic spine from showed mild, chronic compression deformities with mild degenerative

changes. (Tr. 524; *see* 544-45, 561). Claimant's thoracic spine showed kyphosis, and Dr. Weaver treated Claimant with bracing for this. (Tr. 557).

During the administrative proceedings in November 2022 and February 2023, Herbert Meites, M.D. and Paul Carlile, M.D., reviewed the medical and other evidence and assessed that Claimant had abilities consistent with light work. (Tr. 67-68, 75-78).

Claimant testified at the January 10, 2024, hearing that she lives with her husband in Tahlequah, Oklahoma. As for her subjective complaints, Claimant further testified that she can bend to put her socks on and get dressed but that causes her pain. She noted that she cannot sit for long periods. She testified that she cannot stand for more than fifteen minutes at a time without having to sit or walk. She said that she can walk from fifteen to thirty minutes at a time. She testified that she cannot lift more than ten to fifteen pounds because it causes pain in her low back. She testified that she must wear a brace due to prior compression fractures in her spine. As for her activities of daily living, she testified that she can dress herself. She testified that she can assist her husband with routine indoor activity duties of daily living such as some cooking, light house cleaning, and wash a few dishes. She testified that she can wash clothes, sit, and fold the clothes; get up and put the clothes away, but she relies on her husband to get the clothes out of the dryer. She testified that she has learned what she can and cannot do. For example, she relies on her husband to do mopping and her sister to mop, clean the showers and the bathtubs. She relies on a rumba robot vacuum to sweep her floors. She testified that she plays with her phone, sews, and feeds her chickens as hobbies.

**Review**

Claimant contends, *inter alia,* the Appeals Council committed reversible legal error by refusing to consider Dr. Hendricks' March 2024 medical source statement on the basis that it was not material. The Court agrees and the decision of the ALJ must therefore be reversed.

Evidence that is submitted in connection with a request for review must be considered by the Appeals Council and included in the administrative record when it is new, material, and chronologically relevant to the period at issue. *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004); *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003). Evidence is considered new when it is neither duplicative nor cumulative, and material when there is a reasonable possibility it could have led to a different outcome. *Threet*, 353 F.3d at 1191. Moreover, the question of whether this standard is satisfied is one of law and subject to *de novo* review by a reviewing court. *Chambers*, 389 F.3d at 1142.

In the instant case, Dr. Randall Hendricks, a spine specialist and one of Claimant's treating physicians, completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) in which he outlined her various functional limitations. (Tr. 38-40). This report was submitted approximately one month after the ALJ rendered her decision on February 2, 2024. Dr. Hendricks noted that Claimant could stand and/or walk less than 30 minutes at a time and less than two out of eight hours a day; sit less than 30 minutes at a time and less than two out of eight hours a day; lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; perform reaching, handling, fingering, and feeling occasionally with the right hand and frequently with the left hand; and would need to alternate positions from sitting every 30 minutes and standing in one place every 15 minutes. (Tr. 38-39). Moreover, while also able to concentrate sufficiently to perform simple and some complex tasks due to her pain or medications, Dr. Hendricks further

stated that Claimant would be absent from work at least three days per month due to her thoracic and lower back pain or treatment of the same. (Tr. 40).

In evaluating this evidence that was submitted in connection with Claimant's request for review, the Appeals Council not only declined to provide an analysis of Dr. Hendricks' medical opinions under the standards set forth in 20 C.F.R. § 404.1520c, it also declined to exhibit Dr. Hendricks' medical source statement based on its finding that such evidence failed to "show a reasonable probability that it would change the outcome of the decision." (Tr. 2). While the Appeals Council's failure to specifically analyze Dr. Hendricks' medical opinions was within its discretion, *Vallejo v. Berryhill*, 849 F.3d 951, 955-56 (10th Cir. 2017), its refusal to exhibit and further consider the medical source statement containing those opinions based on a lack of materiality was improper as a matter of law.

In this regard, the evidence met the standards set forth in *Chambers*. Dr. Hendrick's report was not created until after the ALJ's decision, and it was neither duplicative, nor cumulative of other evidence. Further, it was chronologically relevant because it was based on Claimant's longstanding impairments of thoracic and lower back pain. (Tr. 38-40, 331, 348, 355, 364, 370, 373, 427, 432, 442-443, 493, 500, 521, 523, 559).

As noted by Claimant, Dr. Hendricks is a treating spine specialist who was the only provider to evaluate Claimant's limitations based on a combination of her impairments (rather than from the standpoint of one particular condition like her SI joints, or neck that Dr. Ahmadinia considered in May 2020 and April 2021). (Tr. 38-40, 387, 424). The limitations he indicated would have precluded even sedentary work had they been adopted based on her thoracic and lumbar conditions that the ALJ discounted in finding her capable of performing light work with only certain postural and environmental limitations. (Tr.15, 38-40). Therefore, the finding that this

opinion was not material, i.e. lacked a reasonable probability of changing the outcome of the decision, was not justified based on the evidence of record. (Tr. 2).

Moreover, the Appeals Council's finding that Dr. Hendricks' report lacked a reasonable probability of changing the decision implies that his opinions lacked evidentiary support. However, Claimant not only required physical therapy for her entire spine with findings of limited mobility, lower extremity deformities, soft tissue abnormalities, upper body muscle weakness in early 2019 even before sustaining her September 2019 work injury (Tr. 331, 355- 362), but she also later displayed mild to moderate abnormalities on lumbar and hip imaging, various positive orthopedic tests, painful hip mobility, and gait abnormalities while also undergoing bilateral SI joint fusion surgeries before the end of 2020. (Tr. 348, 366, 371, 374, 377, 380, 388, 396, 399, 402, 449, 451). Further, she continued seeking regular medical treatment while exhibiting altered lower extremity sensation, reduced spinal mobility, mild lumbar imaging abnormalities (including vertebral deformity causing instability), hip tenderness with mild to severe imaging abnormalities, difficulty changing positions, mild problems with heel and toe walking, left ankle numbness, lumbar tenderness, positive straight leg raise testing, mild thoracic imaging abnormalities with spinal cord indentation, and cervical and occipital tenderness during the remainder of the relevant period. (Tr. 429, 432, 436, 439, 441-442, 488, 494, 499-500, 542, 560).

Therefore, under these circumstances Dr. Hendricks' March 2024 medical source statement should have been deemed new, material, and chronologically relevant and thus exhibited and considered in assessing whether the ALJ's decision was supported by substantial evidence. *Chambers*, 389 F.3d at 1142; *Threet*, 353 F.3d at 1191.

Accordingly, the Court finds the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**IT IS SO ORDERD this 30th day of May, 2025.**

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**